IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-41051-TLS |
| ) | |
| JIMMY L. POWERS and ) | CH. 13 |
| CAROLYN L. POWERS, ) | |
| ) | |
| Debtors. ) | |

# ORDER

Trial was held in Lincoln, Nebraska, on January 20, 2011, on Debtors' objection to claim of Trotter, Inc. (Fil. #48) and a resistance filed by Trotter, Inc. (Fil. #52). Michael D. Carper appeared for Debtors, and Barry Geweke appeared for Trotter, Inc. ("Trotter"). Evidence and testimony were received, and this matter was taken under advisement.

*Background*

The relevant history of this claim objection goes back to November 28, 2007, when Debtors commenced a Chapter 11 case in this court, Case No. BK07-42251-TLS. In their schedules in that case, Debtors valued the real property constituting their home residence at 1110 Trail Drive, Gibbon, Nebraska, at $150,000.00. The assessed value of the property at that time was $111,355.00.

Trotter filed its claim in the Chapter 11 case on December 28, 2007, as a secured claim in the amount of $16,965.22. Trotter asserted a security interest in Debtors' 2007 hay crop by virtue of a fertilizer/agricultural chemical lien under Nebraska law. Trotter's asserted lien in the hay crop was, however, junior to the security interest of Town & Country Bank which had a lien on virtually all assets of Debtors, including the hay crop. The total amount of the Town & Country Bank claim far exceeded the value of the hay crop alone. Thus, Debtors took the position that Trotter was unsecured.

Debtors filed a plan and an amended plan in the Chapter 11 case. Each time, Trotter was treated as an unsecured creditor. Trotter objected to the amended plan asserting that it was a secured creditor and that the doctrine of marshalling should be applied to satisfy the lien of Town & Country Bank from collateral other than the hay crop, leaving that value for Trotter.

Debtors subsequently entered into stipulations with both Trotter and Town & Country Bank, which ultimately allowed Debtors' amended plan to be confirmed in the Chapter 11 case. The stipulation gave Trotter, among other things, a junior deed of trust lien on Debtors' residence for the amount of Trotter's claim.

Debtors were unable to maintain payments under their confirmed Chapter 11 plan and, on January 29, 2009, converted the case to Chapter 7. An order of discharge under Chapter 7 was entered on July 13, 2009. Trotter subsequently recorded a notice of default pursuant to its deed of

trust encumbering Debtors' residence and scheduled a trustee's sale for April 9, 2010. This Chapter 13 bankruptcy was filed on April 8, 2010.

Sometime during the course of these proceedings most of the collateral securing the claim of Town & Country Bank was liquidated and Trotter purchased the remaining claim of Town & Country Bank secured solely by Debtors' residence. Trotter filed a proof of claim in this Chapter 13 case for the total sum of $178,959.82, of which it claims $45,000.00 is secured by the residence. Debtors objected to Trotter's claim.

At the commencement of the trial on Debtors' objection to the proof of claim of Trotter, the parties stipulated that the residence is subject to the following liens in the following order of priority:

| | | | |
|---|---|---|---|
| 1. | Buffalo County Treasurer claim for real estate taxes | - | $ 2,660.77 |
| 2. | Deed of trust lien held by Great Western Bank, as successor to TierOne Bank | - | 47,758.61 |
| 3. | Deed of trust lien held by Great Western Bank, as successor to TierOne Bank | - | 34,305.62 |
| 4. | Trotter's claim by assignment by Town & Country Bank | - | [unknown] |
| 5. | Trotter's lien granted pursuant to the Chapter 11 confirmed plan | - | [unknown] |

Debtors assert that there is no equity in the residence to secure Trotter's claim and that its lien can be "stripped off" and treated as wholly unsecured in this Chapter 13 case. The claim objection proceeded to trial on the question of the value of the collateral securing Trotter's claim.

*Discussion*

Before addressing the current value of the residence, this court must first address a legal issue raised by Trotter. Specifically, Trotter asserts that Debtors should be "judicially estopped" from asserting a value of less than $150,000.00 for the residence. Judicial estoppel is based on the proposition that "[w]here a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter assume a contrary position simply because of changed interests, especially if the change in position would prejudice a party who acquiesced to the original position." *Ginter v. Alliant Bank, Boonville (In re Ginter)*, 349 B.R. 193, 197-98 (B.A.P. 8th Cir. 2006) (citations omitted). The purpose of judicial estoppel is to protect "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* Whether to invoke judicial estoppel is within the discretion of the court. *Id.*

Trotter asserts that this court should invoke judicial estoppel to prevent Debtors from valuing the residence at less than $150,000.00 since that is the value they used in their 2007 Chapter 11 case.

Trotter asserts that it relied on that value when entering into the stipulation confirming the plan in the Chapter 11 case. Also, James Trotter, the representative of Trotter, Inc., asserted that he relied upon Debtors' valuation and the assessed tax value of the home in agreeing to the stipulation regarding confirmation of the Chapter 11 plan.

Contrary to the assertions of Trotter, I do not believe that this is a case in which judicial estoppel should apply. Specifically, on February 1, 2008, Town & Country Bank obtained an appraisal of the residence, which was subsequently filed in the Chapter 11 case at filing No. 95. That appraisal valued the residence in the amount of $50,000.00. More than two months later, Trotter objected to the Chapter 11 plan, which objection was settled by the stipulation giving Trotter a deed of trust encumbering the residence. The bottom line is that Trotter was an active participant in the Chapter 11 bankruptcy proceeding and the Town & Country Bank appraisal in the amount of $50,000.00 was filed for record and used in the bankruptcy case prior to the stipulation entered into between Debtors and Trotter. Thus, Trotter was at least constructively aware of the $50,000.00 appraised value and it is simply not credible that Trotter changed its position or otherwise relied to its detriment on the scheduled value of $150,000.00 for the residence. Furthermore, prior to the stipulation, Trotter only had a junior lien on the hay crop, which lien was likely of no value at all. Therefore, Trotter's claim that judicial estoppel should be applied is denied.

Turning now to the value of the secured claim asserted by Trotter, the parties agree that other than the residence, there is no other collateral securing the claim of Trotter.

Debtors presented the appraisal of Tracy Hock who inspected the residence on two different occasions and, as of September 13, 2010, arrived at a value in the amount of $50,000.00. Mr. Hock testified at the trial and noted that the value of the residence would have been higher but for the extensive repairs that would be necessary to bring it up to market standards. Apparently, Debtors have been in the process of remodeling the interior of the residence for several years, leaving much of the interior of the residence in a state of disarray. Mr. Hock testified that the repairs needed included replacing siding, floor coverings, finishing walls with exposed studs, finishing drywall and other walls, enclosing an exposed ceiling, and other such repairs more fully explained in his appraisal report. He also mentioned a strong animal odor within the residence.

In addition to Mr. Hock's appraisal and his testimony, the parties stipulated to the admissibility of an appraisal known as the "Werkmeister appraisal" conducted for TierOne Bank, which appraisal arrived at a value as of April 8, 2009, in the amount of $50,000.00 (Fil. #122 and #123). Werkmeister was also the appraiser for Town & Country Bank who had prepared an appraisal finding a value of $50,000.00 as of February 1, 2008, which appraisal was submitted during the Chapter 11 proceeding. Accordingly, on at least three different occasions in 2008, 2009, and again in 2010, duly licensed appraisers have found the value of Debtors' residence to be $50,000.00.

Trotter makes three arguments to counter the $50,000.00 value asserted by Debtors. The first argument – judicial estoppel – has already been addressed. Trotter's second argument is that the county has valued the property for tax purposes at values ranging between $109,000.00 and $112,000.00 from 2007 through 2010. In that regard, Trotter notes that Debtors never objected to

-3-

the county's valuation. In this case, I find that the assessed tax value is not a reliable indicator of the residence's market value in light of the substantial interior repairs needed according to the testimony of Mr. Hock. The county's valuation did not include an interior inspection of the residence. While it would certainly have been prudent for Debtors to object to the county's valuation, their failure to object does not establish the market value of the residence.

Trotter's third and final argument is that Trotter had made a written offer to purchase the residence from Debtors for $125,000.00. I find that argument to be completely self-serving and irrelevant, particularly since no foundation was established with regard to Trotter's ability to value real estate.

Therefore, the only competent evidence provided is that the market value of Debtors' residence is, and was at the commencement of this case, $50,000.00. According to the stipulation of the parties, Great Western Bank/TierOne Bank holds prior liens encumbering the residence of more than $80,000.00. As such, the junior liens held by Trotter (whether by virtue of its own deed of trust or by assignment from Town & Country Bank) are wholly unsecured and may be stripped off in this Chapter 13 proceeding. Debtors in Chapter 13 may "strip off" or wholly avoid the lien of a junior mortgagee where there is no equity securing the security interest in the property. This question has already been decided in this jurisdiction by *In re Sanders*, 202 B.R. 986 (Bankr. D. Neb. 1996).

IT IS, THEREFORE, ORDERED that the objection to claim (Fil. #48) is sustained. The claim of Trotter may be treated as wholly unsecured in this proceeding, and upon completion of payments pursuant to a confirmed Chapter 13 plan, any security interest claimed by Trotter shall be deemed avoided.

DATED: February 4, 2011.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Michael D. Carper
    *Barry Geweke
    Kathleen Laughlin
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.